**STATE of Tennessee, Appellee,**

v.

**Michael E. MINTHORN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 11, 1995.

Permission to Appeal Denied Feb. 5, 1996.

William H. Bryson, Woodbury, for Appellant.

Charles W. Burson, Attorney General, Christina S. Shevalier, Assistant Attorney General, Nashville, David L. Puckett, Asst. District Attorney General, Murfreesboro, for Appellee.

*OPINION*

WADE, Judge.

The defendant, Michael E. Minthorn, was convicted of rape and, as a multiple offender, received a Range II sentence of twenty years. On appeal the defendant claims the evidence is insufficient and the sentence is excessive.

We affirm the trial court's judgment.

R.H., the fourteen-year-old female victim, testified that she had been raped by the defendant while spending the night at his home. A special education student, R.H. testified that the defendant had been a trusted neighbor and friend prior to this incident.

On the evening of December 21, 1992, Teresa Minthorn, wife of the defendant, left their children at the victim's home. When she returned to pick up her children, Ms. Minthorn invited the victim to stay overnight at the Minthorn residence and the victim's father consented. The Minthorn family proceeded to their residence. The victim stayed up after the other children went to bed. The defendant's mother-in-law, who had visited during the course of the evening, left at about 11:00 P.M. Afterwards, Teresa Minthorn went to bed.

The defendant, who had been building a jewelry box for his mother-in-law, then sat down on the couch next to the victim. He stood up, took his clothes off, and then removed the victim's shorts and panties.

The victim testified that she tried to get away but the defendant grabbed her arm and pushed her face down on the couch. He turned her over on her back and spread her legs apart with his knees. He then took her shirt off and asked her if he could stick his "private" in her. When she resisted, the defendant said, "I'll stick it in you anyways" and then did so. When the victim tried to scream, the defendant placed his hand over her mouth. At about 12:00 midnight, he put his clothes back on and warned her that if she told anyone what had happened he would do it again. The defendant then went upstairs. The victim testified that because she was afraid to go home alone, she put her

clothes back on and went to sleep on the couch.

At about 9:30 A.M., Ms. Minthorn returned the victim to her own residence. The victim informed her father of the events of the night before. The victim's family walked with her to a nearby health department. When no one could examine her, they walked to a clinic where a nurse gave them a ride to a hospital emergency room.

On cross-examination, the victim acknowledged that on the previous Saturday the defendant told her that if she came back on Monday night they would "do it." She admitted that when she stayed in the defendant's home on the Monday night of the rape, she was afraid of the possible consequences.

Donna Corino, a registered nurse, admitted the victim to the hospital at 1:45 P.M. on the day after the offense. The victim reported that she had been raped by a neighbor and gave his address. The nurse performed a rape kit analysis on the victim and later, took a blood sample from the defendant.

Samera Zavaro, a forensic serologist with the Tennessee Bureau of Investigation, tested the blood, semen, and saliva samples taken from both the victim and the defendant. While the tests did not conclusively prove that the defendant had intercourse with the victim, they did not exclude him as a suspect.

The defendant, his wife, and his mother-in-law, Evelyn Mathis, testified for the defense. They had gone to a gospel singing on the night of the assault and had returned between 8:30 and 9:30 P.M. The defendant's wife had gone to pick up their children at the victim's home and the victim had come over to spend the night. Ms. Mathis left at about 11:00 P.M. Ms. Minthorn claimed that she and the defendant went to bed together at about 11:30 P.M. At 5:00 A.M., they heard the victim answer a knock at the front door. When the defendant went downstairs an hour later, the victim, awake on the couch, told them that "Budget," a man who lived in their housing project, had been at the door.

Budget was not available to testify at trial because he had moved somewhere in Nashville. When the defendant's wife took the victim home, she did not mention the incident.

The defendant admitted having a prior record for burglary, breaking and entering, and grand larceny. He denied any prior sexual offenses and denied any sexual contact with the victim.

Deputy Les Bush testified for the state as a rebuttal witness. He asserted that the defendant, in his pretrial statement, admitted that his wife had gone to bed first at 10:45 P.M.

I

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App.1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); Tenn.R.App.P. 13(e).

Here, the jury chose to accredit the testimony of the victim and rejected the evidence presented on behalf of the defendant. It was entitled to do so. Thus we find that the evidence was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

II

Next, the defendant argues that the trial court erred by classifying him as a multiple offender and by imposing the maximum possible sentence within Range II. In support of this argument, the defendant asserts that his 1963 conviction is too remote and should

not have been considered in establishing his range.

When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210.

In order to classify as a multiple offender, the defendant must have a "minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn.Code Ann. § 40–35–106(a)(1). The defendant admitted to the four prior felony convictions relied upon by the trial court in establishing his range. Some of the convictions were from out of state; the defense agreed on what grade these offenses would be in Tennessee.

■ Even though the defendant argues that one of these convictions was too old to have been considered, there is no statutory limitation on the age of a conviction in the determination of whether the defendant is a multiple offender. Tenn.Code Ann. § 40–35–106(b); *see also State v. Rick A. Eaton,* No. 03C01–9202–CR–00044, 1992 WL 386328 (Tenn.Crim.App., at Knoxville, December 29, 1992), *perm. to appeal denied,* (Tenn.1993). Moreover, even if the trial court had not considered the 1963 conviction, there were three remaining prior felony convictions. That would have been sufficient to classify the defendant as a Range II, multiple offender.

■ At the sentencing hearing, the trial court applied the following enhancement factors in imposing the maximum sentence:

(1) A previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range, Tenn.Code Ann. § 40–35–114(1);

(2) A victim of the offense was particularly vulnerable because of ... mental disability, Tenn.Code Ann. § 40–35–114(4);

(3) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, Tenn.Code Ann. § 40–35–114(7); and

(4) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn.Code Ann. § 40–35–114(8).

Although the defendant makes the broad claim that he should not have received the maximum sentence, he does not make any specific challenge to the factors applied by the trial court. In our view, the record supports the findings. Under those circumstances, the imposition of the maximum sentence appears to be warranted.

Accordingly, the judgment of the trial court is affirmed.

WELLES, J., and RUSSELL, Sp. J., concur.