IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2010

**STATE OF TENNESSEE v. JIM HUNTER**

**Appeal from the Criminal Court for Hamilton County**
**No. 262897     Rebecca J. Stern, Judge**

**No.  E2009-01967-CCA-R3-CD - Filed November 3, 2010**

The Defendant, Jim Hunter, was indicted for attempted first degree murder and domestic aggravated assault.  After a jury trial, the Defendant was convicted of reckless endangerment and reckless aggravated assault.  The trial court sentenced the Defendant to concurrent sentences of eight years for the reckless aggravated assault conviction and 11 months and 29 days for the reckless endangerment conviction.  In this appeal as of right, the Defendant contends (1) that the trial court violated his Sixth Amendment right to a jury trial by basing his sentence on enhancement factors not determined by the jury and (2) that one of his convictions should not have been considered in determining his status as a multiple offender because of its age.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Jonathan Thomas Turner, Chattanooga, Tennessee, for the appellant, Jim Hunter.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William H. Cox, III, District Attorney General; and Bates Bryan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the night of January 5, 2007, Peggy Conner was alone at a construction site in a house that was being rebuilt.  She and the Defendant had been using the gutted house as a makeshift home since October 2006.  Ms. Conner testified that when the Defendant returned

to the house that night, he asked her if she was ready to die. The Defendant approached her, holding up a crack pipe, and said, "I live for this." Ms. Conner testified that over the next several hours the Defendant struck her with a metal pipe, splitting her arm open; dragged her around the room by her hair; struck her in the face with a two-by-four; choked and kicked her; struck her on the hand with a hammer; threatened her with a crowbar; tried to snap her neck; removed her clothes; cut off her hair; and stabbed her repeatedly with a pair of sewing scissors. The Defendant only stopped when a brick was thrown through a window of the house. Ms. Conner testified that after the Defendant left to investigate who threw the brick, she escaped through a window. She walked down the street wrapped in a comforter until she reached a nearby house and called for help.

Detective Vincent Holoman testified that officers responding to the scene located a crowbar, a pair of scissors, hair, a cut-up blue shirt, and a two-by-four inside the house. Detective Holoman obtained a statement from Ms. Conner at the hospital. He testified that she appeared to be in pain, that her eyes were "bloodied," and that her hair had been cut off. The Defendant was arrested a short time later near the house and taken to the police station. Detective Holoman testified that at the police station, the Defendant's pants were covered in red stains.

The Defendant testified that he was helping renovate the house and the owner allowed him to stay there to protect against thieves. The Defendant stated that he allowed Ms. Conner to stay with him because she did not have anywhere else to live. The Defendant testified that he had never assaulted Ms. Conner and that she told him that someone had robbed and attacked her. The Defendant also testified that when he returned to the house, he found one of the windows broken and that Ms. Conner told him she had broken the window to get into the house. The Defendant claimed that she was injured when she broke the window, he helped her clean the wound, and that is how he got her blood on his pants. The Defendant testified that he and Ms. Conner smoked crack cocaine together and that Ms. Conner later fell in a portion of the house that had no flooring. The Defendant stated that after they had smoked the last of their crack cocaine, he left the house but that he left his key and his wallet because Ms. Conner was begging him not to leave and to promise her he would come back. The Defendant did not return to the house or see Ms. Conner again before he was arrested.

The jury convicted the Defendant of misdemeanor reckless endangerment and reckless aggravated assault. At the sentencing hearing, the State presented the presentence investigation report along with certified copies of the Defendant's prior felony convictions. The trial court found that the convictions qualified the Defendant as a Range II offender. The trial court also found that the following enhancement factors applied: (1) the Defendant had "a huge, long previous history of criminal convictions or criminal behavior[;]" (5) the

Defendant treated the victim with exceptional cruelty; (6) the personal injuries inflicted on the victim were particularly great; (8) the Defendant had a previous history of unwillingness to comply with the conditions of his sentence involving release into the community; (10) the Defendant had no hesitation about committing a crime where the risk to human life was great; and (17) the crime was committed under circumstances where the potential for bodily injury to the victim was great. See Tenn. Code Ann. § 40-35-114. The trial court found the sole mitigating factor to be that the Defendant was unable to obtain drug treatment earlier in his life. Based on these enhancing and mitigating factors the trial court sentenced the Defendant to concurrent sentences of eight years for the reckless aggravated assault and 11 months and 29 days for the misdemeanor reckless endangerment conviction.

## Analysis

### I. Length of Sentence

The Defendant contends that the trial court erred in sentencing him to a term of eight years because the trial court based its decision on enhancement factors that had not been determined by the jury. The Defendant cites State v. Gomez, 239 S.W.3d 733 (Tenn. 2007), for the proposition that the trial court's enhancement of the Defendant's sentence based on "judicially determined facts" violates the Defendant's Sixth Amendment right to a jury trial. The State responds that the 2005 amendments to the Criminal Sentencing Reform Act of 1989 cured Tennessee's sentencing structure of any Sixth Amendment constitutional defects. Because this offense occurred well after the effective date of the sentencing act amendments, the State argues the trial court did not err in sentencing the Defendant to an eight year term.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Our supreme court has held that Tennessee's former sentencing act, which established presumptive minimum sentences that required the trial court to enhance sentences based on facts not found by the jury, violated the Sixth Amendment as interpreted by Blakely v. Washington, 542 U.S. 296 (2004), and its progeny. Gomez II, 239 S.W.3d at 740-41. However, the holding of Gomez II applies only to defendants sentenced under Tennessee's

pre-2005 sentencing act. In response to Blakely, our sentencing act was revised to one in which the "[i]mposition of a 'presumptive sentence' in the absence of enhancing and mitigating factors is no longer mandatory." Id. at 740 n. 8 (citing Tenn. Code Ann. § 40-35-210(c)). The Supreme Court has held that systems such as Tennessee's amended act of 2005 "permit judges genuinely 'to exercise broad discretion . . . within a statutory range'" and encounters "no Sixth Amendment shoal." Cunningham v. California, 549 U.S. 270, 294 n. 18 (2007). This offense occurred on January 5, 2007, and as such, the Defendant was sentenced pursuant to the amended act of 2005. The amended act renders the enhancement and mitigating factors merely advisory, and not binding on the trial court. See State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Accordingly, the Defendant's Sixth Amendment-based argument regarding his sentence is without merit, and the Defendant is denied relief on this issue.

## II. Multiple Offender Status

The Defendant does not argue that the trial court improperly sentenced him as a Range II offender but instead "avers that this is an unjust law and should be changed" because of the age of one of the convictions used to determine he was a multiple offender. The State responds that the Defendant's argument should be addressed to the legislature and not this court.

As this court has previously made clear, "there is no statutory limitation on the age of a conviction in the determination of whether the defendant is a multiple offender." State v. Minthorn, 925 S.W.2d 234, 237 (Tenn. Crim. App. 1995) (citing Tenn. Code Ann. § 40-35-106(b)) (Wade, J.). The Sentencing Commission's Comments on this section note the following:

> Prior law restricted the time frame in which a defendant's conviction record could be considered for enhanced sentencing of a subsequent offense. The commission believes that all prior felony convictions should be considered in determining eligibility for a multiple offender classification. Thus, subdivision (b)(2) permits consideration of all felony convictions occurring any time during the defendant's life.

Tenn. Code Ann. § 40-35-106(b). The statute is clear that any felony conviction, no matter the age, may be used to determine whether a defendant is a multiple offender. Therefore, we conclude the trial court did not err in classifying the Defendant as a Range II offender.

## Conclusion

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE