IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs March 25, 2015

**SHON QUINTEL BLANKS v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Bradley County**
**No. 13-CR-308      Amy A. Reedy, Judge**

---

**No. E2014-01342-CCA-R3-PC – Filed August 25, 2015**

---

The petitioner, Shon Quintel Blanks, filed a petition for post-conviction relief from his convictions of possession of cocaine with the intent to sell, a Class B felony, and possession of marijuana with the intent to sell, a Class E felony, and the accompanying ten-year sentence. The petitioner alleged that his counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. The post-conviction court denied the petition, and the petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee (on appeal), and C. Richard Hughes, Cleveland, Tennessee (at trial), for the appellant, Shon Quintel Blanks.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Stephen Davis Crump, District Attorney General; and Dallas Scott III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On February 15, 2013, the petitioner entered guilty pleas to possession of cocaine with the intent to sell and possession of marijuana with the intent to sell. At the

beginning of the plea hearing, the court observed that it had been scheduled to hear trial counsel's motion to withdraw and the petitioner's pro se motion to suppress but that the petitioner had instead chosen to plead guilty. As a factual basis for the pleas, the State recited:

> On September the 20th, 2011, agents with the Drug Task Force had a confidential source that purchased cocaine base rocks from Room 215 at the Travel Inn here in Cleveland, in Bradley County, Tennessee. Based on that purchase they went and got a search warrant for that room and executed that search warrant. During this process they had the room under surveillance. They watched the [petitioner], who turned out to be Mr. Blanks. Once they executed the search warrant they found a bag in the hotel room that contained 15 crack rocks along with the marijuana packaged for resale, and that was sent off to the lab and . . . was confirmed as both of those items.

Pursuant to the plea agreement, the petitioner received a "ten year suspended sentence based on time that he has been in jail already" for the Class B felony conviction. On the Class E felony conviction, the petitioner received a concurrent sentence of one year. When the trial court asked if the petitioner was a standard, Range I offender, the State responded, "Judge, he is probably a Range II offender. That was taken into account on this plea agreement."

Upon questioning by the trial court, the petitioner stated that he was not threatened or coerced into pleading guilty, that he understood what he was doing, that he had reviewed the plea with trial counsel, and that he was satisfied with trial counsel's representation.

Thereafter, the petitioner, acting pro se, filed a petition for post-conviction relief and an amended petition. The post-conviction court found that the petition alleged a colorable claim for relief and appointed counsel, who then filed another amended post-conviction petition. The petitions alleged, in pertinent part, that the petitioner's trial counsel was ineffective and that the petitioner's pleas were not knowingly and voluntarily entered because trial counsel incorrectly advised him about the potential sentence he faced if he were convicted at trial. The petitioner also alleged he was concerned that if counsel were allowed to withdraw, he would be forced to represent himself at the suppression hearing. He was frightened and coerced into pleading guilty.

At the post-conviction hearing, trial counsel testified that she was "sworn in" as an attorney on October 31, 2011. She joined a law firm in October 2012 and had been

accepting appointments in criminal cases for approximately one month before she was appointed to represent the petitioner. She met with the petitioner six times and spent over eighteen hours on the case.

Trial counsel said that the petitioner was difficult, uncooperative, and frustrating. Often when she attempted to have discussions with him, he yelled at her and told her he did not want her to represent him. Afterward, he would call her and ask for her to continue as his counsel. She tried to explain to the petitioner that some of the motions he wanted her to file had no legal basis. The petitioner did not want to listen to her, and he wanted to do most of the talking. Trial counsel said that she regularly discussed the petitioner's case with the partners in her law firm, who were competent and experienced in criminal law.

During her representation, trial counsel learned that the petitioner had filed several pro se motions, including at least one motion to suppress. In the suppression motion, the petitioner raised concerns that his Fourth Amendment rights were violated during a search of his motel room and a stop of a vehicle in which he was riding. The petitioner questioned, in part, the validity of the warrant authorizing the search of the motel room. The application and affidavit for a search warrant and the search warrant were entered as exhibits at the post-conviction hearing. In the affidavit, Drug Task Force Agent Bill Cherry requested a warrant to search room 215 of the Travel Inn, which was occupied by "John Doe AKA 'J.'" Agent Cherry stated that he received information from a cooperating confidential source (CS) who previously had provided information about the distribution of illegal drugs that led to the seizure of such drugs. The CS told Agent Cherry that a black male known as "J" stayed in different motels in Cleveland and distributed marijuana and cocaine from his motel rooms. Agent Cherry said that on September 20, 2011, the CS made a controlled purchase of cocaine base from "John Doe AKA 'J'" in room 215 of the Travel Inn. The CS also saw marijuana in the room. The transaction was monitored by Drug Task Force agents. Throughout the affidavit, Agent Cherry repeatedly referred to "John Doe AKA 'J.'" However, in the last paragraph of the affidavit, the agent asked for a warrant "to search the persons of James A. Burke and Angela Burke and the premises . . . herein described." Trial counsel said that room 215 was searched and that drugs were found. Thereafter, the petitioner and his girlfriend, Chiffon Stroud, were charged with possession of the drugs. Trial counsel recalled that the State had an audio recording of the purported controlled sale, but she could not recall whether she listened to the recording.

Trial counsel researched the suppression issues, including the fact that the petitioner was never named in the affidavit and search warrant, and discussed the matter with both partners in her law firm. Afterward, she advised the petitioner of his Fourth Amendment rights regarding the traffic stop and the search of the motel room. She said:

I don't remember if I printed off the case for him or not, but I do remember that I made very detailed notes of every aspect of my research and every aspect of my consultation with both attorneys and I went through it with [him] line by line and explained it to him in very good detail, and since I met with him several times I had ample opportunity to do that with him.

She advised the petitioner that a motion to suppress probably would be unsuccessful. Trial counsel said that, nevertheless, if the trial court had denied her motion to withdraw and the petitioner had insisted, she would have filed a motion to suppress and would have argued at a suppression hearing.

Trial counsel said that she spoke with co-defendant Stroud twice. Stroud "said that she knew somebody that needed to be a witness but couldn't tell me their name." Stroud also said that the petitioner never went by "J." Trial counsel did not recall telling Stroud that Stroud needed to separate herself from the petitioner because the case against him was overwhelming. Trial counsel also did not recall being told that Stroud would testify against the petitioner.

Trial counsel said that when she reviewed the State's open-file discovery materials, she saw the petitioner's Tennessee Offender Management Information System (TOMIS) report, which cataloged his previous convictions. Based upon the report, trial counsel determined that the petitioner was at least a Range II offender and possibly a Range III offender.[1] Trial counsel acknowledged that the State did not have certified copies of the petitioner's out-of-state convictions to establish his Range III status and that at the time of the petitioner's guilty pleas, the State had not filed a notice to seek enhanced punishment. Trial counsel said that she discussed the sentencing ranges with the petitioner.

Trial counsel acknowledged that on February 7, she hand delivered a letter to the petitioner, advising him of a plea offer and that he was at least a Range II offender and possibly a Range III offender. In the letter, trial counsel noted the petitioner's prior request to proceed pro se, and she offered to file a motion to withdraw. The petitioner told counsel that he intended to file a federal civil rights lawsuit against the State and name her as one of the defendants. However, trial counsel never saw a filed complaint in which she was named as a party.

---

[1] See Tenn. Code Ann. §§ 40-35-106 (providing the requirements for classification as a multiple, Range II offender); 40-35-107(providing the requirements for classification as a persistent, Range III offender).

Trial counsel said that on February 8, she filed a motion to withdraw. In the motion, counsel stated that after the petitioner threatened to name her in a lawsuit, their relationship deteriorated to the point that she no longer believed she could adequately represent him. She also advised the court of the petitioner's desire to proceed pro se. Counsel said that she was in the courtroom on February 15 for the motion hearing; however, she could not recall whether she knew a suppression hearing was also scheduled for that day. Before the motion could be heard, the petitioner asked to speak with trial counsel, and he told her that he wanted to plead guilty. Trial counsel understood that in exchange for the petitioner's guilty pleas, the charges against co-defendant Stroud would be dismissed. The petitioner told trial counsel that he had not sold drugs to anyone in the motel room. He then told her that he intended to plead guilty. Trial counsel "told him that he couldn't plead guilty if he was indeed innocent, and he did go ahead and say that he did want to plead guilty to these charges." Trial counsel said that the petitioner begged her to continue representing him.

Trial counsel recalled that prior to the petitioner's guilty plea, the trial court asked about the status of the motion to withdraw and the motion to suppress. Trial counsel explained that the guilty plea resolved both motions. Trial counsel said that she did not recall whether she was prepared to argue the suppression motion; nevertheless, she said that if the motion to withdraw had been denied, she would have filed a motion to suppress and represented the petitioner at the suppression hearing.

On cross-examination, trial counsel said that the petitioner's TOMIS report reflected that he had a number of prior felony convictions in Tennessee and Georgia. She said that the convictions would have qualified the petitioner as either a Range II or a Range III offender. She believed that the State would have filed a notice of enhanced sentence if the case had gone to trial.

Trial counsel said that she spoke with the partners in her law firm, as well as other attorneys. Those she spoke with thought

> [t]hat this was an amazing plea offer and that my client would not be very bright if he did not take this offer and that as much as I would have enjoyed a trial as an academic exercise, but it would not have been in my client's best interest, that he should have taken the plea. Each attorney went through several of the issues if not all of the issues with me and all had the same thought, that he should take the offer.

Trial counsel said that when she went into court on February 15, she saw Drug Task Force agents who were in the courtroom to testify against the petitioner. She stated that she thought the officers' presence influenced the petitioner's decision to plead guilty,

noting that the petitioner had no witnesses except himself and co-defendant Stroud. Trial counsel said she had been told by the State that the plea offer would be revoked after February 15. She said that the petitioner knew the plea offer was expiring. Trial counsel opined that the petitioner's post-conviction action "was some sort [of] 'buyer's remorse.'"

Chiffon Stroud testified that she and the petitioner had been in a romantic relationship for five years and that they had known each other for ten years. Stroud said that after she was charged, she was represented by a public defender. Stroud said that around the end of October or the beginning of November, the petitioner's trial counsel called and asked a few questions. Stroud said that she never agreed to testify against the petitioner.

The petitioner testified that he initially informed the trial court that he intended to hire an attorney. He later told the court that he wanted to represent himself and filed several pro se motions, including motions to suppress. Thereafter, he asked the court to appoint counsel. The petitioner acknowledged that trial counsel met with him numerous times and that they discussed the elements of the charged offenses. The petitioner said that after trial counsel reviewed the discovery materials, she advised him of the State's evidence.

The petitioner said that immediately before his arrest, the police stopped a vehicle in which he and Stroud were passengers and detained them for several hours. The petitioner was concerned about the constitutionality of the traffic stop and his subsequent detainment. He was also concerned about the validity of the search warrant, noting that the affidavit underlying the warrant mentioned the names John Doe, "J," James A. Burke, and Angela Burke but did not mention his or Stroud's names. Based upon his concerns, the petitioner filed at least one pro se motion to suppress. After counsel was appointed, he told her about his concerns and that he wanted to have a suppression hearing. Counsel told the petitioner that she had researched the issue and spoken with other attorneys and did not think a motion to suppress would be successful.

The petitioner asserted that trial counsel told him that if he did not accept the plea offer, he risked being convicted at trial and being sentenced as a Range III offender to thirty-six years. Because his prior convictions were more than ten years old, the petitioner thought they could not be used to establish his sentencing range; however, counsel advised him that the convictions could be used regardless of their age. The petitioner maintained that because of the State's failure to file a notice to seek enhanced punishment, he should have been classified as a Range I offender.

The petitioner said that during his February 7 meeting with trial counsel, he told her that he wanted a suppression hearing and that he did not want to accept the State's

plea offer. The petitioner denied telling counsel during that meeting that he wanted to represent himself. He acknowledged that he later called trial counsel and expressed a desire to represent himself. After the call, he received a letter from counsel advising him that she intended to withdraw.

The petitioner said that on February 15, the trial court was scheduled to hear trial counsel's motion to withdraw and the petitioner's pro se motion to suppress. When the petitioner arrived in court, he saw numerous Drug Task Force agents who were present to testify against him. The petitioner said that he was scared he would be forced to represent himself at the hearing if trial counsel were allowed to withdraw. The petitioner did not know that if the motion to withdraw was denied, counsel would continue to represent him. The petitioner said that trial counsel did not talk to him that morning; however, Stroud's public defender approached him and said that Stroud intended to testify against the petitioner. The petitioner then decided to accept the plea offer. He said, "I accepted it because I didn't have no choice, no other choice. My attorney was withdrawing from my case and I was also going to be put on the stand and not knowing the law, not knowing nothing, I had to face everybody."

The petitioner said that Stroud told him that trial counsel had advised her to separate herself from the petitioner and to testify against him because the State had no evidence against Stroud.

The petitioner acknowledged that he told the trial court at the plea hearing that he had no complaints against trial counsel. However, he asserted that he did not know at the time that counsel had given him "inaccurate information" about his sentencing range. He said that he "didn't know what was going on" and that he felt pressured to plead guilty. The petitioner acknowledged that he was released on probation immediately after his guilty pleas. The petitioner said that a ten-year probationary sentence was not "a good plea offer" because he was innocent of the crimes.

On cross-examination, the petitioner acknowledged that the affidavit underlying the search warrant repeatedly referred to the subject as "John Doe AKA 'J.'" The petitioner initially maintained that he had never been known as "J." However, he later conceded that he had been indicted in Bradley County as "Slinky/J."

The petitioner acknowledged that in 1996, he pled guilty in Hamilton County to robbery, that in 1998, he pled guilty in Georgia to two counts of "theft of bringing stolen property into the state" and possession of a firearm by a convicted felon, and that in 2005, he pled guilty in Hamilton County to five or six forgeries and one or two automobile burglaries. He further acknowledged that upon questioning by the trial court during the guilty plea hearing on the instant charges, he stated that he was acting voluntarily, that he understood the proceedings, and that he was not being forced, coerced, or threatened.

After the hearing, the post-conviction court entered an order, finding that the petitioner failed to prove any deficiency by trial counsel. The court further found that the petitioner's guilty pleas were knowingly and voluntarily made. Accordingly, the post-conviction court denied the petition. On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

### A. Ineffective Assistance of Counsel

The appellant claims that his trial counsel was ineffective. Specifically, he claims that she erroneously advised him of his sentencing range. The State responds that the trial court correctly found that trial counsel was not ineffective. We agree with the State.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Regarding the petitioner's claim that trial counsel's advice concerning his sentencing was incorrect because of the State's failure to file a notice of enhanced punishment, we note that the State was required to file the notice not less than ten days prior to trial. See Tenn. Code Ann. § 40-35-202(a); Tenn. R. Crim. P. 12.3(a). The petitioner pled guilty before such notice was required.

As to petitioner's contention that his prior convictions could not be used to enhance punishment, we note that although Tennessee Rule of Evidence 609 provides that evidence of a conviction for impeachment purposes is generally not admissible if more than ten years have elapsed from the date of release from confinement, or, if no confinement was imposed, from the date of conviction, no such time restriction is provided for determining sentencing ranges. See Tenn. Code Ann. §§ 40-35-106, -107. Indeed, this court has observed that "there is no statutory limitation on the age of a conviction in the determination of whether the defendant is a multiple[, Range II or a persistent, Range III] offender." State v. Minthorn, 925 S.W.2d 234, 237 (Tenn. Crim. App. 1995). Accordingly, we conclude that there is no proof that trial counsel incorrectly advised the petitioner of his potential sentencing range.

Further, we note that the post-conviction court found that trial counsel was credible. Trial counsel testified, and the petitioner agreed, that she met with him numerous times, explained the elements of the charged offenses, and reviewed the State's proof against the petitioner. Trial counsel also said that the petitioner was uncooperative, that he yelled at her, that he wanted to do all the talking, and that he did not want to listen to her. Trial counsel acknowledged that the petitioner was one of her first criminal clients; nevertheless, she extensively researched the issues in his case and discussed the

issues with experienced partners in her law firm. Trial counsel examined the State's discovery and learned that, although the State did not have certified copies of the petitioner's prior convictions and had not yet filed a notice to seek enhanced punishment, the petitioner had the requisite number of convictions to qualify as a Range II or Range III offender. We conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel was not ineffective.

## B. Knowing and Voluntary Guilty Pleas

Next, the petitioner argues that his guilty pleas were not knowingly and voluntarily entered because they were based upon erroneous information provided by counsel and were coerced by trial counsel's threat to withdraw, which would have left the petitioner to argue his suppression motion. The State responds that the post-conviction court correctly found that the petitioner's guilty pleas were knowingly and voluntarily entered. Again, we agree with the State.

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowingly and voluntarily made, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Initially, we note that at the guilty plea hearing, the petitioner stated that he was not threatened or coerced into pleading guilty, that he understood what he was doing, that

he had reviewed the plea with trial counsel, and that he was satisfied with trial counsel's representation. Generally, "[a] petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" Dale Wayne Wilbanks v. State, No. E2014-00229-CCA-R3-PC, 2015 WL 354773, at *10 (Tenn. Crim. App. at Knoxville, Jan. 28, 2015) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Moreover, the proof at the post-conviction hearing reveals that the petitioner was no stranger to the criminal justice system. In particular, he knew the consequences of a guilty plea, having previously entered guilty pleas and being thoroughly advised by the trial court during the plea submission hearing. The petitioner maintains that he was coerced into pleading guilty by the prospect of having to represent himself during a suppression hearing for which he was unprepared. However, the petitioner acknowledged that he was concerned that Drug Task Force agents would testify against him at the suppression hearing and that Stroud would testify against him at trial. Therefore, the petitioner decided to enter guilty pleas to avoid the risk of receiving a greater sentence if convicted at trial. We conclude that the post-conviction court did not err by finding that the petitioner's pleas were knowingly and voluntarily entered.

## III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE